**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**


| | |
|---|---|
| PNC BANK, NA, successor to **)** | |
| National City Bank, successor in **)** | |
| interest to MidAmerica Bank, FSB, **)** | |
| **)** | |
| Plaintiff, **)** | |
| **)** | |
| vs. **)** | Case No. 11 C 301 |
| **)** | |
| OHCMC-OSWEGO, LLC, **)** | |
| **)** | |
| Defendant. **)** | |


## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW  F. KENNELLY, District Judge:

PNC Bank (PNC) has sued OHCMC-Oswego (OHCMC) on a promissory note. PNC also sued Camille Hoffman, an OHCMC officer, on her guaranty of the note, but the Court granted Hoffman's motion to dismiss the claim against her for improper venue. *PNC Bank v. OHCMC-Oswego, LLC*, No. 11 C 301, slip op. (N.D. Ill. June 20, 2011). PNC has moved for summary judgment against OHCMC for the unpaid balance, interest, late fees, and attorney's fees. For the reasons stated below, the Court grants the motion in part and denies it in part.

### Background

On September 30, 2005, PNC loaned $12,350,000 to OHCMC, an Illinois limited liability company. On the same day, OHCMC executed a promissory note reflecting the loan amount and a mortgage securing OHCMC's obligations against a parcel of real estate in Oswego, Illinois. The promissory note included the following statement:

> Upon the occurrence of an Event of Default as defined in Section 19 of the Mortgage, the interest shall be calculated on the balance of the principal due herein at a rate equal to six (6%) percent in excess of the Interest Rate. Further, [PNC] Bank reserves the right to assess a late charge equal to five percent (5%) of any payment that is received by the Bank on or after the fifteenth day of the month in which it is due, which five percent (5%) shall be due and payable with the next payment.

Pl. Ex. 1 at 3.

PNC and OHCMC later entered into five modifications extending OHCMC's promissory note, the latest of which established a maturity date of November 1, 2010. OHCMC admits that it has failed to pay all amounts due under the note.

In its motion for summary judgment, PNC asked the Court to find that OHCMC owes the following amounts: $10,689,446.12 in unpaid principal, $268,083.62 in unpaid interest, $563,135.30 in late fees, and $16,131.50 in attorney's fees and costs. Along with its motion, PNC submitted computer printouts that it calls the "Loan History," which appear to reflect credits and debits on an account. It also submitted an affidavit from David Ruisch, a PNC vice president, containing statements such as:

> The Loan History is generated by a computer system that is used by PNC to . . . track, maintain, and calculate all amounts due and owing on any PNC account. . . . The computer program has always been found to be both accurate and reliable. . . . It is the loan history and the records set forth therein upon which I relied in making this Affidavit on behalf of Plaintiff.

Ruisch Aff. ¶¶ 15, 19, 23. The affidavit then recites the amounts due for the loan principal, interest, late fees, and "litigation expenses." *Id*. ¶ 24. It breaks the latter amount down into "attorney's fees," "clerk," and "certified mail," but it does not provide any further description of how the figure for attorney's fees was reached. *Id*.

Before responding to PNC's motion, OHCMC filed a motion asking the Court to allow limited discovery on the issue of how PNC had calculated late fees and attorney's

2

fees.  The Court allowed OHCMC to depose Ruisch on these issues.  His deposition

included the following exchanges:

> Q:  The late fees that are listed in paragraph 24 of your affidavit, how was it determined that that was the correct amount of late fees?
>
> A:  It's calculated all on a system, and then the pay-off department puts it together.
>
> Q:  Do you know what was included in that late fee amount?
>
> A:  It's whatever the loan documents say we can charge for late fees.
>
> Q:  Do you know when those late fees were incurred?
>
> A:  The minute it goes in default, is what I'd assume.
>
> Q:  Sitting here, do you know when exactly they were incurred, the late fees were incurred?
>
> A:  I don't have that report in front of me, no.
>
> Q:  And that report is not attached to your affidavit, correct?
>
> A:  It appears not, no.

Ruisch Dep. at 25:11-26:4.

> Q:  You gave an answer that the loan documents would control the late charges. What did you mean by that?
>
> A:  There's a reference in loan documents that says what we can charge on a monthly basis.
>
> . . .
>
> Q:  Back to paragraph 24, of your affidavit, do you know how the late fees depicted therein were calculated?
>
> A:  They were calculated based on the note by the pay-off department and on the loan servicing system.
>
> Q:  So whatever was due on maturity and not paid, was there a 5 percent assessment of that amount?

A:  Yes.  And as it says here, it's through July 26, 2011.

*Id*. at 40:5-41:14.

OHCMC then submitted a response in opposition to summary judgment, in which it did not dispute that it owes the unpaid principal and interest or PNC's calculation of those amounts.  OHCMC argued, however, that PNC's motion and Ruisch's deposition failed to establish an adequate basis for PNC's determination of the late fees and attorney's fees, and it asked the Court to deny summary judgment on those issues. OHCMC's response included only the first portion of Ruisch's deposition testimony cited above.

PNC submitted a reply that attached supplemental affidavits from its counsel and Ruisch reflecting how the attorney's fees and late fees were calculated, as well as the second portion of Ruisch's deposition testimony cited above.  OHCMC moved to strike the two supplemental affidavits, arguing that PNC had improperly submitted them for the first time in its reply brief.  The Court granted OHCMC's motion to strike, stating in part:

> When plaintiff moved for summary judgment, it included a rather conclusory affidavit on [its late fees and attorney's fees] requests and no supporting documents.  Defendant sought discovery to ascertain the basis for these requests.  When defendant took the deposition of plaintiff's affiant, he testified that he could not explain how late fees had been calculated, and he confirmed that he had provided no documents supporting the attorney's fee request. Defendant then argued in response to summary judgment that the Court should deny these requests because they were inadequately supported.  Plaintiff filed a reply that included two affidavits from its attorneys and documents supporting the attorney's fee and late fee requests.  Defendant has moved to strike these materials and argument based on them, contending that it has been unfairly deprived of the ability to address them.  The Court agrees.
>
> It should have been relatively obvious to plaintiff that it needed to include with its summary judgment motion the materials that supported each of its claims,

4

including the late fee and attorney's fee requests. Plaintiff was not entitled to sit back, wait and see how defendant responded, and then [provide] the necessary material with its reply, when defendant no longer had any ability to address the points. This is nothing like a situation in which a moving party is permitted to include new materials in a reply because the opposing party raised issues in response that the moving party could not fairly anticipate. The Court therefore grants the motion to strike. The Court notes, however, that this makes it likely that the late fee and attorney's fee issues will not be resolved on this summary judgment motion and thus will have to be resolved later (in other words, the claims are not forfeited just because plaintiff might not win them on summary judgment).

Order of Nov. 16, 2011 (dkt. no. 48). The Court later denied PNC's motion to reconsider this decision.

### Discussion

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To determine whether a genuine issue of material fact exists, the Court must view the record in the light most favorable to the nonmoving party and draw reasonable inferences in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *AA Sales & Assocs., Inc. v. Coni-Seal, Inc.,* 550 F. 3d 605, 609 (7th Cir. 2008). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### A.    Principal and interest

As noted above, OHCMC admits that it has not paid the amounts due under the loan. It addresses its response to PNC's motion for summary judgment entirely to the issues of late fees and attorney's fees, without so much as mentioning the other

amounts. It disputes only two items in PNC's Local Rule 56.1 statement of undisputed facts: the total amount due and a statement that the note and mortgages entitle PNC to recover attorney's fees. Both of these disputes focus on the fee issues, rather than on the principal and interest. OHCMC has not provided a Local Rule 56.1 statement of its own, nor has it provided any other evidence regarding PNC's claims.

The Court concludes that OHCMC has admitted its liability to PNC for the principal loan amount and interest. It therefore grants PNC's motion for summary judgment in PNC's favor as to the principal and interest due: $10,689,446.12 in principal and $268,083.62 in interest.

## B. Attorney's fees

Because the Court has stricken OHCMC's supplemental affidavits that describe the basis for its attorney's fees, the only evidence supporting the fee amount consists Ruisch's original affidavit stating that the amount is owed and his testimony that he had reviewed and approved PNC's attorney's bills for reasonableness.

Illinois law requires a party seeking an award of attorney's fees to present "sufficient evidence from which the trial court can render a decision as to their reasonableness." *Kaiser v. MEPC Am. Props., Inc.*, 164 Ill. App. 3d 978, 983, 518 N.E.2d 424, 427 (1987). This evidence "must specify the services performed, by whom they were performed, the time expended thereon and the hourly rate charged therefor." *Id.*, 164 Ill. App. 3d at 984, 518 N.E.2d at 427.

PNC does not argue that the remaining evidence makes the required showing. The Court therefore declines to enter summary judgment in favor of PNC on the issue of attorney's fees.

6

**C.** **Late fees**

OHCMC argues that PNC is obligated to provide similarly detailed documentation in support of its claim for late fees. PNC does not dispute this obligation, contending only that it has provided adequate documentation.

Although the Court has also stricken Ruisch's supplemental affidavit describing PNC's calculation of late fees, there is more evidence of the basis for these amounts in the record than OHCMC suggests. Ruisch testified that, pursuant to the terms of the note, the late fees represented an assessment of five percent of the total amount due and unpaid. PNC also submitted the "Loan History" printouts with its original motion and not, as OHCMC appears to assert, for the first time with its reply.

Despite this, the Court finds that PNC has not submitted sufficient evidence to establish the absence of a genuine issue of material fact regarding the amount it is owed in late fees. Adding the $10,689,446.12 in unpaid principal and $268,083.62 in unpaid interest asserted in PNC's motion and Ruisch's initial affidavit gives a total of $10,957,529.74, five percent of which is $547,876.49. None of the arguments or evidence that have not been stricken provide an explanation for the difference between this amount and the $563,135.30 that PNC seeks.[1] Many of the pages in the "Loan History" printouts are completely or nearly illegible, and neither the printouts themselves nor PNC's briefs and affidavits provide an explanation for how the values reflected therein factored into the calculation of late fees.

---

[1] Even if the Court were to consider Ruisch's supplemental affidavit regarding late fees, which alleges a higher principal amount, neither the affidavit nor PNC's reply brief explain why this calculation of the principal differs from the amount originally asserted.

For these reasons, the Court declines to enter summary judgment on the issue of late fees.

## Conclusion

For the reasons stated above, the Court grants plaintiff's motion in part and denies it in part [docket no. 30].  The case is set for a status hearing on January 23, 2012 at 8:30 a.m. in chambers (Room 2188) to set a schedule for further proceedings.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  January 11, 2012