# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PNC BANK, NA, successor to National City Bank, successor in interest to MidAmerica Bank, FSB, <br><br>Plaintiff, <br><br>vs. <br><br>OHCMC-OSWEGO, LLC, <br><br>Defendant. | Case No. 11 C 301 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

PNC Bank (PNC) has sued OHCMC-Oswego (OHCMC) on a promissory note. PNC also sued Camille Hoffman, an OHCMC officer, on her guaranty of the note, but the Court granted Hoffman's motion to dismiss the claim against her for improper venue. *PNC Bank, NA v. OHMC-Oswego, LLC*, No. 11 C 301, slip op. (N.D. Ill. June 20, 2011). The Court previously granted summary judgment for PNC on two issues: the unpaid balance of the loan, and interest. *PNC Bank, NA v. OHMC-Oswego, LLC*, No. 11 C 301, 2012 WL 88257 (N.D. Ill. Jan. 11, 2012). PNC has now moved for summary judgment on the issues of late fees and attorney's fees. For the reasons stated below, the Court grants the motion in part and directs entry of final judgment in PNC's favor.

## Background

On September 30, 2005, PNC loaned $12,350,000 to OHCMC, an Illinois limited

liability company. On the same day, the parties executed a promissory note reflecting the loan amount and a mortgage on a parcel of real estate in Oswego, Illinois to secure OHCMC's obligations. The promissory note included the following terms:

> Upon the occurrence of an Event of Default as defined in Section 19 of the Mortgage, the interest shall be calculated on the balance of the principal due herein at a rate equal to six (6%) percent in excess of the Interest Rate. Further, [PNC] Bank reserves the right to assess a late charge equal to five percent (5%) of any payment that is received by the Bank on or after the fifteenth day of the month in which it is due, which five percent (5%) shall be due and payable with the next payment.

Pl. Ex. 1 at 2.

> After any Event of Default, if the holder of this Note employs counsel for advice with respect to enforcing this Note, or to intervene, file a petition, answer, motion or other pleading in any suit or proceeding relating to this Note, or to attempt to collect this Note from or to enforce this Note against the Borrower, then in any such events, all of the reasonable attorneys' fees arising from such services and any expenses, costs and charges relating thereto, shall be an additional liability owing hereunder by the Borrower to the holder of this Note payable on demand.

*Id.* at 3.

PNC and OHCMC later entered into five modifications extending the promissory note, the latest of which established a maturity date of November 1, 2010. OHCMC has admitted throughout this litigation that it failed to pay all amounts due under the note. In response to PNC's previous motion for summary judgment, OHCMC did not contest that it owed $10,689,446.12 in principal and $268,083.62 in interest, and the Court accordingly granted summary judgment in PNC's favor regarding those amounts. *PNC Bank*, 2012 WL 88257, at *3. OHCMC did, however, contest PNC's claim that it was owed $563,135.30 in late fees and $16,131.50 in attorney's fees and costs. The Court declined to grant summary judgment on these points, concluding that PNC had not provided sufficient documentation to establish their accuracy. *Id.* at *4. PNC now

moves for summary judgment on these issues.

## Discussion

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To determine whether a genuine issue of material fact exists, the Court must view the record in the light most favorable to the nonmoving party and draw reasonable inferences in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *AA Sales & Assocs., Inc. v. Coni-Seal, Inc.,* 550 F. 3d 605, 609 (7th Cir. 2008). A genuine issue of material fact exists only if "the evidence is such that a reasonable [finder of fact] could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

As the Court explains below, OHCMC does not contest that it owes PNC's stated amount in late fees or that it owes PNC some amount for attorney's fees. OHCMC contends only that PNC's claimed $29,592.70 in attorney's fees should be reduced by a total of $10,729. OHCMC argues that the Court should not award PNC attorney's fees based on certain redacted billing entries; for PNC's negotiation and drafting of a loan extension; or for PNC's unsuccessful opposition to OHCMC's motions to dismiss Camille Hoffman and to strike material from PNC's earlier summary judgment motion.

### A.  Late fees

OHCMC has abandoned its argument that PNC has not provided sufficiently detailed documentation in support of its claim for late fees. As it did with the issues of principal and interest in response to PNC's earlier motion for summary judgment,

OHCMC has not even mentioned the late fees in its response to PNC's present motion. It disputes only one item in PNC's Local Rule 56.1 statement of undisputed facts: the total amount of attorney's fees. It has not provided a Local Rule 56.1 statement or any other evidence of its own.

The Court concludes that OHCMC has admitted its liability to PNC on the issue of late fees. As PNC points out, OHCMC has admitted to the following statement: "PNC is entitled to late fees in an amount *greater than* $563,135.30." Pl.'s L.R. 56.1 Stmt. ¶ 22 (emphasis added); Def.'s Resp. to Pl.'s L.R. 56.1 Stmt. at 1. PNC, however, has not provided any argument for what it may be owed over and above that amount. The Court therefore grants PNC's request for summary judgment on the issue of "late fees in the amount of $563,135.30." Pl.'s Reply at 2.

**B.    Redacted billing entries**

OHCMC argues that "[m]any of the invoices supporting PNC's request for fees have been redacted" and that OHCMC is therefore "unable to determine what services were rendered and whether fees are recoverable for those services." Def.'s Resp. at 6. OHCMC disputes eight entries that are redacted and for which PNC's counsel has billed a total of $768.50. The entries contain information such as "Review term sheet from PNC regarding a [redacted]" and "Correspondence to and from David Ruisch regarding [redacted]." Pl.'s Ex. 7 at 21, 26. Each of the entries indicates which attorney performed the work, on which date and for how long the work was performed, and the amount that was charged based on the attorney's hourly rate.

PNC contends that it only redacted information that was protected by the attorney-client privilege and that the remaining information is sufficient to support its

4

claim.[1] It argues that its billing records comport with Illinois law, which requires "supporting documentation [to list] each attorney, the time spent performing the services, and a description of the services [that is] adequate to inform both the client and the court of what the attorneys are doing." *Mountbatten Sur. Co., Inc. v. Szabo Contracting, Inc.*, 349 Ill. App. 3d 857, 874, 812 N.E.2d 90, 105 (2004) (citing *Kaiser v. MEPC Am. Props., Inc.*, 164 Ill. App. 3d 978, 983, 518 N.E.2d 424, 427 (1987)).

After reviewing the redacted billing records, the Court concludes that PNC's submissions are sufficient to support its request for fees based on the redacted entries. Another judge in this district, considering a similar issue, concluded that "even the most vague entries" in a particular attorney's petition were sufficient under Illinois law because they indicated "the individual who performed the work as well as the date and time the task was performed," unlike the entries disallowed in *Kaiser*, which had neither. *Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp.*, No. 93 C 3065, 1995 WL 275594, at *5 (N.D. Ill. May 8, 1995). PNC's entries likewise contain this information. The judge in *Balcor* rejected the notion that "entries for telephone conferences that do not indicate the subject matter of the call" were "unallowable" because they did not "state exactly what occurred." *Id.* at *6; *see also Greviskes v. Univs. Research Ass'n, Inc.*, 417 F.3d 752, 757 (7th Cir. 2005) (upholding aware of attorney's fees based on a

---

[1] PNC has also provided documents that it claims are unredacted billing records "for the Court's review in camera thereby mooting Defendant's objection." Pl.'s Reply at 3. This description and the absence of a statement that PNC has provided a copy to OHCMC indicate that OHCMC has not had the opportunity to review the documents. PNC provides no argument or legal support to suggest that the Court may properly consider such material *ex parte*. Accordingly, the Court has not reviewed this material or used it in any way in reaching its decision on this matter.

petition from which the petitioner's counsel had "redacted attorney-client privileged communications and entries relating to summary judgment materials, matters that were irrelevant to the fee petition").

The Court's conclusion draws additional support from the fact that OHCMC objects to only eight entries in nearly fifty pages of billing statements – entries for which the amount billed consists of less than three percent of the total. "[W]hen a small amount of the entries lack specificity, the petition taken as a whole can provide the basis of meaningful review by a court." *Balcor*, 1995 WL 275594, at *6.

**C.    Loan extension**

OHCMC argues that PNC's counsel seeks $4,837.00 based on "advising and counseling PNC [in] connection with negotiating a modification of the loan" and that these amounts are not covered by the terms of the original note. Def.'s Resp. at 5. As PNC points out, however, each of the five loan modifications includes a provision under which OHCMC promises to pay "all out-of-pocket costs and expenses incurred by Lender in connection with this Agreement, including, without limitation, . . . attorneys' fees and expenses." Pl.'s Ex. A at 18, 27, 36, 44; Pl.'s Ex. A Part 1B at 6. The Court concludes that this language accounts for PNC's expenses in connection with negotiating the loan modifications and denies OHCMC's request to strike these amounts from PNC's fees.

**D.    Opposition to motions**

OHCMC contends that it should not have to pay for PNC's counsel's unsuccessful opposition to two motions: OHCMC's motion to dismiss Camille Hoffman for improper venue and OHCMC's motion to strike certain material from PNC's reply in

support of its first motion for summary judgment.

OHCMC cites two cases in support of its argument that PNC is "not entitled to recover attorneys' fees for work which should have been unnecessary." Def.'s Resp. at 4. In the first of these cases, the court noted that "inexperienced associates had been assigned research problems which should be within the general knowledge of experienced practitioners" and that the losing party "should not be required to pay fees to educate attorneys who are paid at substantial rates." *In re Estate of Halas*, 159 Ill. App. 3d 818, 832, 512 N.E.2d 1276, 1284-85 (1987). The court in *Halas*, however, essentially held that the petitioner's counsel had engaged in "inefficient administration" in its approach to the case, not that time spent on unsuccessful opposition is not properly recoverable in connection with a fee petition.

OHCMC also cites a case in which the Illinois Appellate Court determined that a plaintiff was not entitled to compound interest under a note and that the plaintiff's attorney was not entitled to fees based on the claim for compound interest. The court concluded that a plaintiff seeking fees under a note "is limited to the reasonable fees and expenses generated to collect only the amount to which he was entitled under the instrument containing the provision for attorney fees." *Helland v. Helland*, 214 Ill. App. 3d 275, 278, 573 N.E.2d 357, 359 (1991). This case does not support OHCMC's contentions. It stands for the proposition that pursuit of relief under an erroneous legal theory may not be covered, not that fees for unsuccessful opposition to a motion are always unrecoverable.

"The determination of the reasonableness of a request for fees is a matter that lies within the discretion of the trial court." *Cabrera v. First Nat. Bank of Wheaton*, 324

Ill. App. 3d 85, 104, 753 N.E.2d 1138, 1154 (2001). "The award [of attorney's fees] will consist only of those fees that are reasonable, consisting of reasonable charges for reasonable services." *McHenry Sav. Bank. v. Autoworks of Wauconda, Inc.*, 399 Ill. App. 3d 104, 113, 924 N.E.2d 1197, 1206 (2010). "The trial court should scrutinize [billing] records for their reasonableness in the context of the case." *Id.* A court may consider factors including "the nature of the case, the novelty and difficulty of the case, the skill and standing of the attorneys, the degree of responsibility required, the usual and customary charges in the community for similar work, and the connection between the case and the fees charged." *Id.*

In *McHenry*, the Illinois Appellate Court reversed a trial court's disallowance of fees for time spent on a summary judgment motion that the petitioner "contemplated but did not pursue." *Id.* at 118, 924 N.E.2d at 1210. The court concluded that it was reasonable for the attorney to spend time "explor[ing] the viability" of the motion. *Id.* The court noted that fees may be excluded "if they were generated pursuing unsuccessful claims," *id.*, as they were in *Helland*. "[W]hen a party's claims for relief involve a common core of facts or are based on related legal theories, so that much of the attorney time is devoted generally to the proceeding as a whole," however, "the fee award should not be reduced simply because not all of the relief requested was obtained." *Id.*

The Court concludes that PNC's counsel's work on the motion to dismiss Hoffman was a reasonable charge for an action "arising from" its attempt to "enforce this Note against the Borrower." Pl. Ex. 1 at 3. PNC's filing of a claim against Hoffman, despite the Court's eventual determination that venue was improper, was not the pursuit

8

of a separate claim or theory of relief. Instead, it was part of PNC's work regarding a "common core of facts," and the time that PNC's counsel's spent on it can reasonably be construed as time "devoted generally to the proceeding as a whole." *McHenry,* 324 Ill. App. 3d at 118, 924 N.E.2d at 1210.

By contrast, OHCMC's motion to strike was based on PNC having submitted certain affidavits for the first time with its reply in support of its initial summary judgment motion. The Court granted OHCMC's motion, stating:

> It should have been relatively obvious to plaintiff that it needed to include with its summary judgment motion the materials that supported each of its claims, including the late fee and attorney's fee requests. Plaintiff was not entitled to sit back, wait and see how defendant responded, and then [provide] the necessary material with its reply, when defendant no longer had any ability to address the points. This is nothing like a situation in which a moving party is permitted to include new materials in a reply because the opposing party raised issues in response that the moving party could not fairly anticipate. The Court therefore grants the motion to strike.

Order of Nov. 16, 2011 (dkt. no. 48).

Among the factors that the Court must consider in analyzing the reasonableness of a fee request are the "diligence and reasonable prudence used by the attorneys." *Halas*, 159 Ill. App. 3d at 832, 512 N.E.2d at 1284. The Court agrees with OHCMC that the factors discussed in the November 16 order reflect that PNC's opposition to the motion to strike was "work that should not have been necessary," *id.* at 832, 512 N.E.2d at 1285, and that it was therefore "[un]reasonable[] in the context of the case." *McHenry*, 399 Ill. App. 3d at 113, 924 N.E.2d at 1206. PNC does not contest OHCMC's contention that the amount reflected in the billing entries devoted to this matter totals $1819.50, and the Court therefore reduces PNC's fees by that amount.

9

**E.     Total**

OHCMC contends that it should not have to pay for PNC's stated charge of $125 for mail services. Under Illinois law, "[t]he 'costs' of . . . delivery services and the like are, more accurately, ordinary 'expenses' which are normally included in office overhead and, in turn, encompassed within the hourly fee rate charged by the firm." *Kaiser*, 164 Ill. App. 3d at 989, 518 N.E.2d at 431. PNC does not respond to this argument, and the Court accordingly grants OHCMC's request to reduce the fee amount by $125.

In sum, the Court reduces the amount that PNC' requested, $29,592.70, by $1,944.50 ($1,819.50 plus $125). The Court grants summary judgment in PNC's favor for attorney's fees in the amount of $27,648.20.

## Conclusion

For the reasons stated above, the Court grants plaintiff's motion in part and denies it in part [docket no. 30]. The Clerk is directed to enter judgment in favor of the plaintiff in the total amount of $11,548,313.24, consisting of $10,689,446.12 in principal, $268,083.62 in interest, $563,135.30 in late fees, and $27,648.20 in attorney's fees.

s/ Matthew F. Kennelly<br>
MATTHEW F. KENNELLY<br>
United States District Judge

Date:  June 4, 2012